UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| TRIANO A. WILLIAMS | ) | Case No.: 20-09047 |
| | ) | |
| Debtor, | ) | |
| | ) | |
| | | |
| AMERICAN COLLEGE OF | ) | |
| EDUCATION, INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | Adv. Pro. No.: 20-00245 |
| | ) | |
| TRIANO A. WILLIAMS | ) | |
| | ) | |
| Defendant. | ) | |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

This matter came before the Court on Plaintiff American College of Education, Inc.'s ("**ACE**") Motion for Default Judgment on the Complaint to Determine Dischargeability of Debt. Having reviewed the Motion as well as the entire record, the Court now makes the following findings of fact and conclusions of law.

### FINDINGS OF FACT

1. ACE is a private, online college based in Indianapolis, Indiana, focused on education, healthcare, and nursing.

2. ACE hired Mr. Williams in 2007 as a Desktop Support employee. At the time he was hired, Mr. Williams worked out of ACE's Chicago, Illinois office.

1

3. From 2011 until the time of his termination, Mr. Williams was permitted to work remotely from his home in Chicago, Illinois. However, Mr. Williams was often required to travel to ACE's Indianapolis, Indiana office to perform work duties for ACE.

4. In November 2012, Mr. Williams was promoted to the position of Systems Administrator in the Information Technology ("**IT**") Department. In this role, Mr. Williams was responsible for the day-to-day operation support for ACE's IT systems.

5. On February 12, 2016, ACE told Mr. Williams that his position was being relocated to its Indianapolis headquarters and that he would no longer be permitted to work remotely.

6. ACE offered Mr. Williams paid relocation to Indianapolis or a severance package. In response, Mr. Williams alleged that he was subjected to discriminatory treatment due to his race over the course of his employment and that ACE forced him to choose between relocating and leaving his job due to his race and in retaliation for his alleged prior complaints about discrimination.

7. On February 29, 2016, ACE told Mr. Williams he no longer needed to report for work and should focus on finding new employment. Mr. Williams' attorney sent ACE a letter that day, informing ACE of Mr. Williams' intent to file suit related to his separation from employment.

8. Also on February 29, 2016, ACE cut off Mr. Williams' access to its network by changing his password and disabling his account.

9. Although Mr. Williams' network access was disabled, he was still able to log into the ACE-issued laptop he kept at home by using either his previous password—because the computer was no longer on ACE's network, it would not have received the update invalidating that password—or the local administrator credentials.

10. ACE could not have remotely accessed Mr. Williams' laptop after it was removed from the network.

11. Mr. Williams' employment with ACE officially ended on April 1, 2016.

### I. Mr. Williams Refuses to Restore ACE's Google Email Account

12. Unbeknownst to ACE, at the time Mr. Williams' employment ended, he was the sole administrator of ACE's student e-mail account. The e-mail account's root is "educate.ace.edu" and was hosted by Google on the cloud (hereinafter "**Google Drive**").

13. At the time Mr. Williams' employment ended, there were approximately 2,000 students were registered to use ACE's student email account hosted on the Google Drive including many then-active students.

14. Students used their ACE-issued email addresses to communicate with ACE representatives, fellow students, and faculty. Students also used this account to access their coursework. Former students, many of who were teachers, kept their lesson plans and other work-related documents on ACE's Google Drive.

15. As the sole administrator of the Google Drive, Mr. Williams was the only employee who had access to the password needed to login into ACE's Google Drive at the time of his termination.

16. Mr. Williams set up the administrator account for ACE's student email system using, or later changing the recovery email to, his personal email address, rather than the work email address provided to him by ACE, triano.williams@ace.edu, as well as providing his personal cellular telephone number. Had Mr. Williams' administrator access been set up through his ace.edu email address, ACE would have been able to have Google reset the administrator password for the account.

3

17.     By setting up the administrator account under a non-ACE work email address, Mr. Williams violated ACE's standard protocol with respect to administrator accounts. ACE was unaware that Mr. Williams' administrator account was not linked to his work email address until after his employment ended.

18.     Shortly after Mr. Williams' employment ended, ACE made several requests for Mr. Williams to return his ACE-issued laptop computer.

19.     Mr. Williams did not return his work computer to ACE until May 2016.

20.     Before he returned his laptop computer, Mr. Williams had intentionally installed a new operating system, deleting all relevant data from the hard drive.

21.     Mr. Williams' work computer was also physically damaged. The damage sustained to the computer would not have allowed Mr. Williams to use the computer on a regular basis.

22.     In May 2016, ACE began to receive complaints from current and former students that they could not access the ACE student Google Drive. They also complained that they could not access files that had been saved on the Google Drive, such as class assignments, lesson plans and other critical information.

23.     Upon discovering that it could not access its Google-hosted email account, ACE contacted Google to try to access the email account. ACE was told that because Mr. Williams was the "sole administrator" of the Google Drive it could not turn the account over to ACE. Google informed ACE that it would need to have Mr. Williams reset the password to the Google Drive so that ACE could access its information.

24.     Because Mr. Williams had either set up the Google Drive using, or subsequently changed the recovery contact information to his personal email address and personal cellular

telephone, ACE was unable to access the recovery password to the Google Drive because each request was being diverted to Mr. Williams personal email address and cell phone.

25. After exhausting its efforts to access its student email system through Google, ACE contacted Mr. Williams and asked him to provide the administrator information necessary to turn the Google Drive over to ACE.

26. On May 23, 2016, Mr. Williams texted James Aldridge, ACE's VP of Technology, asking if Mr. Aldridge was able to get into the e-mail account. Mr. Aldridge responded: "Unfortunately, no. I have not be able to get into Google yet. Do you have the username and password for the admin console?"

27. Mr. Williams responded to Mr. Aldridge's text as follows: "My lawyer told me I had to have the communication come through her from you . . . or ace [sic] lawyer before I can try to help."

28. On June 30, 2016, counsel for ACE sent a letter to Mr. Williams' counsel requesting the login information by July 5, 2016.

29. In the response letter, Mr. Williams' attorney represented that he was the sole remaining administrator when he was terminated. She further stated that the login ID and password used by Mr. Williams to access the Google email account were "autosaved" on his laptop computer, which he returned to ACE.

30. Because the system on Mr. Williams' hard drive had been completely wiped and a new operating system was installed, any access to the login and password information for the Google Drive that was "auto-saved" on the hard drive was lost.

31. Based on Mr. Williams' attorney's representation, if Mr. Williams had not intentionally wiped the hard drive to his laptop computer before returning it to ACE, ACE would have been able to access its student email account on Mr. Williams' computer.

32. Mr. Williams also refused to provide the login information to ACE. Instead, his attorney represented that she was "confident that Mr. Williams could assist the college in reinstating the Google email account" if ACE agreed to pay him $200,000 to settle the "dispute" over his employment ending.

33. On July 12, 2016, Mr. Williams contacted KK Byland, Human Resources Director for the College, via email and reaffirmed that he would be "happy" to work with the College "to see if he could help" restore access to the account "upon settlement."

34. Because ACE could not access its student email account, its current and former students were unable to use their ACE-issued Google Drive for communication, coursework and teaching purposes.

35. ACE received a number of complaints by current and former students regarding their inability to access coursework, lesson plans, or other communications. One or more students declined to enroll because of email deliverability issues that ACE was unable to resolve due to lack of access to the Google Drive.

## II. The State Court Judgment

36. On July 19, 2016, ACE filed suit in the Marion County Superior Court, Indiana against Mr. Williams for intentional interference with a contractual relationship, intentional interference with business relationships, violation of the Indiana uniform trade secret act, conversion, offense against intellectual property, breach of fiduciary duty, criminal mischief, and

injunctive relief. The matter is styled *American College of Education, Inc. v. Triano Williams*, Cause No. 49D01-1607-PL-025367.

37. After a hearing on ACE's application for temporary restraining order on July 29, 2016, the Marion County Court ordered Mr. Williams to provide the login and password information to ACE so that ACE could regain control of the Google Drive. Mr. Williams did not respond to that Order.

38. On September 8, 2016, ACE filed its Application for Default Judgment when Mr. Williams failed to appear and otherwise failed to defend against the lawsuit after proper service.

39. Eventually the Marion County Court entered default judgment against Mr. Williams on September 12, 2016 and scheduled a damages hearing for September 28, 2016.

40. At the damages hearing, the Court found that a judgment should be entered on behalf of ACE and against Mr. Williams in the amount of $248,350.00.

41. On October 6, 2016, the Court issued its Order Entering Final Judgment and Award of Damages finding that the following damages should be awarded:

- $175,000 in lost revenue due to potential students failing to enroll for online coursework due to lack of access to the Google Drive;
- $32,250 in lost revenue for reputational damages;
- $1,100 for the loss of Defendant's company-issued computer; and
- $40,000 in attorney's fees.

42. On February 14, 2017, the State Court Judgment was registered as a foreign judgment in the Circuit Court of Cook County, Illinois, Cause No. 17 L 50164.

### III. The Federal Court Judgment

43. On December 30, 2016, Mr. Williams filed suit against ACE in the United States District Court for the Northern District of Illinois asserting claims for violation of Title VII discrimination based upon race, retaliation, violation of 42 U.S.C. § 1981, and violation of Title

VI. The matter is styled *Triano Williams vs. American College of Education, Inc., et al.*, Cause No. 16-C-11746.

44. After exchanging written discovery and deposing Mr. Williams, ACE filed its Motion for Spoliation of Evidence on May 23, 2018, arguing that Mr. Williams intentionally installed a new operating system on the laptop computer issued to him by ACE and deleted critical information that was stored on the computer's hard drive including information pertaining to the Google Drive.

45. After a three-day evidentiary hearing before the Hon. Gary Feinerman, the District Court entered its Memorandum Opinion and Order on September 16, 2019, granting ACE's sanctions motion and dismissing Mr. Williams' claims with prejudice, and ordering Mr. Williams to pay the reasonable attorney fees and costs that ACE incurred in connection with uncovering Mr. Williams' misconduct and litigating the sanctions motion.

46. The District Court specifically found that: (1) Mr. Williams intentionally reinstalled the operating system on his ACE-issued laptop, resulting in the wiping and destruction of potentially relevant information that should have been preserved in the anticipation or conduct of litigation including information related to the Google Drive; (2) Mr. Williams' spoliation was willful—in other words, not only that his reinstallation of the operating system on his ACE-issued laptop was intentional, but also that he knew that the reinstallation would destroy relevant data; and (3) Williams committed perjury by repeatedly lying in his deposition, declaration, and in his testimony at the evidentiary hearing by denying he intentionally reinstalled the operating system. *Triano Williams vs. American College of Education, Inc., et al.*, No. 16-C-11746, 2019 U.S. Dist. LEXIS 157447 (N.D. Ill. 2019).

47. On December 16, 2019, the District Court entered an order requiring Mr. Williams to pay ACE $203,837.44 in fees and costs related to its successful motion for sanctions.

## CONCLUSIONS OF LAW

**I.  The State Court Judgment is Excepted From Discharge**

48. Pursuant to 11 U.S.C. §§ 523(a)(4) and 523(a)(6), the State Court Judgment is nondischargeable.

*A. Nondischargeability Pursuant to 11 U.S.C. § 523(a)(4)*

49. Section 523(a)(4) excepts a debt from discharge if it is for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny. 11 U.S.C. § 523(a)(4).

50. By refusing to provide the administrator login information to ACE for its Google Drive and by wiping all the information and data on his company-issued computer, including but not limited to the username and password for ACE's student email account, Mr. Williams wrongfully exerted unauthorized control over property belonging to ACE with fraudulent intent.

51. Mr. Williams violated the State Court order to turn over the login and password information to ACE so it could rightfully regain control of the Google Drive.

52. As the United States District Court found, Mr. Williams "threw up a smokescreen of farfetched conspiracy theories in an effort to evade consequences for [his] misconduct."

53. Mr. William's conduct constituted and fraud while acting in a fiduciary capacity and ACE has suffered pecuniary loss as a result of such conduct.

54. Pursuant to 11 U.S.C. § 523(a)(4), the damages awarded to ACE in the State Court Judgment resulting from Mr. Williams' larceny is nondischargeable.

9

*B. Nondischargeability Pursuant to 11 U.S.C. § 523(a)(6)*

55. The State Court Judgment is also nondischargeable pursuant to 11 U.S.C. § 523(a)(6).

56. Section 523(a)(6) excepts a debt from discharge if it arises from the willful and malicious injury by the debtor to another entity or to the property of another entity. 11 U.S.C. § 523(a)(6).

57. Mr. Williams willfully and maliciously injured ACE by intentionally reinstalling the operating system on his ACE-issued laptop and wiping all the information and data on the computer.

58. As the sole Systems Administrator, Mr. Williams knew that reinstalling the operating system and wiping the information and data on the computer would cause injury to ACE and its property.

59. Mr. Williams also willfully and maliciously injured ACE by intentionally interfering with ACE's contractual and business relationships with its students.

60. ACE had agreed to provide a Google Drive to its students who choose to use an ACE-issued email address to store coursework and communicate with staff, fellow students, and faculty.

61. Mr. Williams had knowledge of the existence of the Google Drive being offered to ACE's students as he was the one who originally set up the Google Drive as an ACE IT employee.

62. Mr. Williams had knowledge of the existence of ACE's business relationship with its students.

63. By refusing to provide the administrator login information to ACE for its Google drive, and defying the State Court order, Mr. Williams intentionally and maliciously interfered

with ACE's contractual and business relationships with its current and former students as these students could no longer access their ACE-issued Google Drive accounts.

64. There is no justification for Mr. Williams' refusal to provide the login information for ACE's student Google Drive, as he was the sole administrator of the account as an employee of ACE.

65. Additionally, Mr. Williams willfully and maliciously attempted to extort $200,000 from ACE to resolve his alleged dispute, and he ultimately deleted all data that purportedly supported his claims.

66. ACE was injured as a direct and proximate result of Mr. Williams' willful and malicious conduct.

67. Pursuant to 11 U.S.C. § 523(a)(6), the damages awarded to ACE in the State Court Judgment resulting from Mr. Williams' willful and malicious conduct are nondischargeable.

## II. The Federal Court Judgment is Excepted From Discharge

68. Pursuant to 11 U.S.C. § 523(a)(6), the damages awarded to ACE in the Federal Court Judgment are nondischargeable because they arose from Mr. Williams' willful and malicious conduct, namely spoliation of evidence and perjury.

69. Section 523(a)(6) excepts a debt from discharge if it arises from the willful and malicious injury by the debtor to another entity or to the property of another entity. 11 U.S.C. § 523(a)(6).

70. As set forth in the District Court's Memorandum Opinion and Order, Mr. Williams willfully and maliciously injured ACE by intentionally reinstalling the operating system on his ACE-issued laptop, resulting in the wiping and destruction of potentially relevant information that

should have been preserved in the anticipation or conduct of the Federal Court lawsuit. *Triano Williams*, 2019 U.S. Dist. LEXIS 157447 at *44 - 48.

71. As set forth in the District Court's Memorandum Opinion and Order, Mr. Williams' spoliation was willful and he knew that the reinstallation would destroy relevant data. *Id.* at *44. The Court also found that Mr. Williams failed to preserve his personal email or text messages which would have contained the password information for the Google Drive. *Id.* at *9,

72. As set forth in the District Court's Memorandum Opinion and Order, Mr. Williams also willfully and maliciously injured ACE by repeatedly committing perjury by lying in his deposition, in written declarations filed with the Court, and in his live testimony at the evidentiary hearing by denying he intentionally reinstalled the operating system. *Id.* at 44, 46, 48-54.

73. As determined by Judge Feinerman, the damages awarded to ACE in the Federal Court Judgment are a direct result of Mr. Williams' willful and malicious conduct. Accordingly, Mr. Williams is collaterally estopped from relitigating those underlying facts in the bankruptcy court. *See John Labatt Ltd. v. Messina (In re Messina)*, No. 99-A-01573, 2000 Bankr. LEXIS 255 at *23 (finding the doctrine of collateral estoppel applies to dischargeability proceedings pursuant to 11 U.S.C. § 523(a) where a court of competent jurisdiction have previously ruled against a debtor upon specific issues of fact that independently comprise elements of a creditor's nondischargeability claim) (internal citations omitted).

74. Pursuant to 11 U.S.C. § 523(a)(6), the Federal Court Judgment is nondischargeable.

### III. Conclusion

75. In light of the findings of fact and conclusions of law, the Court ORDERS that Judgment on behalf of Plaintiff American College of Education be entered on all Counts of the Complaint.

**SO ORDERED**, this 1st day of _____, 2020.

DEC - 1 2020

HONORABLE JUDGE JACK B. SCHMETTERER

Distribution:

Devon J. Eggert
Beck, Chaet, Bamberger & Polsky, S.C.
330 East Kilbourn Avenue, Tower 2
Suite 1085
Milwaukee, Wisconsin 53202
*deggert@bcblaw.net*

Scott James Preston, (Pro Hac Vice)
Steven A. Baldwin, (Pro Hac Vice)
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
111 Monument Circle, Suite 4600
Indianapolis, IN 46204
*scott.preston@ogletree.com*
*steven.baldwin@ogletree.com*

Triano A. Williams
14115 South Wabash
Riverdale, IL 60827